We have four argued cases this morning. The first is number 22, 1916, Omnitracs, LLC v. Platform Science, Inc., Mr. Wilcox. Thank you, Judge Dyke, and may it please the Court. Jason Wilcox on behalf of Omnitracs. The Board invalidated Omnitracs' patent by allowing hindsight and appeals to common sense to supply claim limitations that are missing from the prior art. An approach this Court has repeatedly rejected in cases like DSS Technologies, Aurendi, and K.S. Hemp. This led the Board to make a series of errors, but the most problematic and the one I want to focus on this morning is how it approached the motivation to modify the prior art or combine the two prior art references together. So the JANKE reference displays a vehicle's current location, not its driven route, much less the driven route determined by location information received from the vehicle. The only explanation the Board gave for why a skilled artisan would modify JANKE to display the driven route was that it would supposedly make it easier to more closely monitor a vehicle's movement. Doesn't it make practical sense that if you're going to have a display of a planned route, like say from here to Washington, and the display is on a vehicle, and the display can also show you deviations from the route, or other displays can show you a route that's been deviated from, or the location of a vehicle, why would it not just be practical for a person of any other skill in the art to connect the two and to say, why don't I have one display that shows me the planned route, but that also shows me the route that the vehicle has deviated, has taken as a deviation? Well, Judge Rayner, I don't think there is a prior art reference that teaches displaying the driven route of the vehicle using location information that's supplied by the vehicle. So when you don't have that... That's what Kadayama does. I don't think that is what Kadayama... Well, it says it does, right? Well, I think if you read Kadayama as a whole, and all of its teachings, rather than just the one statement that the board focused on, which I admit does use the word traveled route... That doesn't seem to be substantial evidence, that one statement, right? Well, I don't think you're supposed to read the prior art in isolation. You're supposed to read it as a whole. And if you look at every other teaching in Kadayama, Kadayama is teaching that what you do is use mathematical approximations. So when it shows, for example, in figures 15 and figure 20, the destination line and the return line, those are just straight lines that it draws. But that's your... Kadayama doesn't say they're mathematical representations, right? I mean, it doesn't say they're mathematical representations, but it just draws them as straight lines in areas where there's no map information, which is what it says at column 10, lines 56 to 60. But even if you think that Kadayama does teach showing the location information derived from the vehicle, and we disagree with that, but I understand you have a different view, Judge Dyke. There's still no motivation to combine that. All that the board offered, again, was the suggestion that, well, it would have been obvious because it would make it easier to keep an eye on the situation. So Kadayama teaches and discloses a navigation system for vehicles that display map and current positional information. So you have a map, and justly, you can have a planned route. I don't understand why Kadayama does not disclose when it says the current positional information. That's got to be information that's coming from the vehicle. Yes, I agree that Kadayama discloses current positional information. So if on the road to Washington, the driver makes a pit stop in Bowie, and it's showing that the vehicle is now in Bowie, why doesn't that meet the limitations of the claim? Because it's just showing you the current location of the vehicle. It's not showing you the driven route of the vehicle. And Kadayama, we submit, does not teach you to make that next step. That's what I'm asking. Wouldn't a person with a lawyer's skill and knowledge look at that and say, why don't I just show you the route that this car is generated from? I mean, it's almost there. I mean, it's close, Judge Rayner, but what was the magic here was figuring out how to make that connection. What you have to do is figure out how to make that connection. I didn't say it was close. The board said it's there in Kadayama. It says it explicitly in Kadayama. Well, the board said that in Appendix 37, but then immediately in the next sentence backed off from that and said, well, that's not even why platform science is relying on. All platform science is relying on is for the idea that you would show both some type of planned route and some type of other route information at the same time, and that whether the locus dots actually are or are not the planned route doesn't matter. We think the board is wrong about the locus dots. We think that everything in Kadayama is about math, but we also think that its motivation to combine teachings are simply insufficient. You may be right, Judge Rayner, that it sounds like common sense and it sounds intuitive, but what this court has said over and over again is when you have a missing limitation, not just a missing motivation to combine, you can't supply that by just saying, well, be common sense or intuitive. But KSR teaches us that a person of skill in the art also has practical sense and can apply that practical sense in situations like this. It does teach that a person of ordinary skill is also a person of ordinary creativity and isn't an automaton. I agree with that, but it uses that in the context of a motivation to combine, not supplying what we submit as a missing limitation. Why is this such a big leap? I mean, the prior art does teach. It suggests the very things you're arguing. So we disagree that the prior art even suggests displaying the driven route using location information that's sent by the vehicle. We agree. Kadayama suggests displaying. Here's what we think the driven route is. It does it based on mathematical calculation. That's our explanation. Kadayama places black dots along the route that a truck has taken, a vehicle has taken. It places black dots along a mathematical approximation of the route that the vehicle took, not using location information actually supplied by the vehicle. Yes, I agree with that, Judge Raynor. But I think that next week... Where do you get the black dots if it's not coming from the vehicle? If you know where you deviated from the route, so I know where I left the route and I know where I am right now, what you do is our expert explained it. How do you know that? That information is coming from the vehicle. Not the black dots. What you know is the present location from the vehicle, and you know from the vehicle, here is where you left the route. What you don't know is... That's where a person of skill in the art, using just practical experience, all they need to do is connect the dots, and you have a deviated route, and it's coming from the vehicle. But figuring out how to get those dots, how to connect them in a way that actually maps onto a map grid, is inventive, we think. And that's certainly not what's happening in Katayama, because you can see it, column 10, lines 56 to 60, that Katayama says it only shows you those black dots and those various lines when you're in an area where there is no map information. So you can't actually map it onto the driven route or the roads the vehicle actually followed. Now, setting that aside, even if I'm wrong about Katayama, and you think that there is substantial evidence for the board's decision, the board's analysis had two steps. The first step was to conclude that when Janky is just showing its planned route and occasional location updates, without showing any deviation, that a skilled artisan would have known that that is showing you both the planned route and the driven route.  That the board didn't rely on Katayama for that. Then at step two, the board did rely on Katayama and said, well, when you have a deviation, for the reasons that Judge Reyna said, maybe you would actually connect the dots rather than just showing your present location. But we think the board is also wrong in that first step. It didn't rely on Katayama, and instead, it made just factually wrong statements about what Janky teaches. So, for example, it said that Janky continuously is probing the vehicle for its location information. It said that at Appendix 26, and it said that at Appendix 30. But that's not what Janky says. Janky says at Column 9, Lines 1 through 4, that it only checks the location of the vehicle periodically. It says that those are waypoints, or when it makes those check-ins. So it says that at Column 5, Lines 16 to 20, and Column 5, Lines 24 to 28. And those are manually entered by someone on a keyboard, which is, again, inconsistent with continually checking the location of the vehicle. What that means is that when you're outside of those periodic checkpoints, the vehicle can be deviating from its route, but what would be displayed in Janky wouldn't tell you that information. Similarly, Janky says at Column 5, Lines 18 and 26, and Column 7, Lines 27 to 28, that it only reports significant route deviations. And when the vehicle deviates significantly, the math of how it works out is it's actually almost a half-mile that it can be off. So if you're a person using Janky's system, and you're watching the vehicle periodically show its location information, and it looks like it's just following the planned route, it could actually be the actual driven route of the vehicle could be an entire half-mile away. In D.C., you could be on 9th Street when you're supposed to be on 13th Street, and in Janky's system, you wouldn't report any deviation. So one of the central pillars of the Board's analysis, that the planned route mirrors the driven route, unless you have a reported deviation, is simply wrong. And equally importantly, the Board didn't even address our arguments about compliance corridors or significant deviations and the fact that you could have these wide corridors where you're actually off the driven route, but Janky isn't reporting that and isn't displaying that in any way. We made that argument at Appendix 464 and 594. Our expert talked about it at Appendix 3066-67. Can you, before your time, address the hours of service limitation? Yes, I'm happy to do that, Judge Reyna. So we think that even if you disagree with everything else that I've said today, at least for Claim 3 in the 216 patent, the Board misconstrued that claim by saying that the phrase based upon location information modifies the display and not the hours of service. The Board's construction is inconsistent with the last antecedent rule and it's not a natural reading of the claim language. So under the last antecedent rule, which this Court has applied in HTC and is well recognized in Supreme Court precedent, a limiting clause or phrase like based upon location information should ordinarily be read as modifying only the noun or phrase that it immediately refers to. I'm baffled as to what exactly you're arguing. Is the suggestion that the display doesn't display the hours requirement with respect to a particularly geographic location? That's right. And really what our point is, Judge Dyke, is that the display, what matters isn't whether the display is based upon location information from the vehicle and how it's displayed, it's the hours of service itself. When they make a calculation, they display it, so I'm not sure. What's the difference between the two? It's how the calculation is done. So, for example, in the prior art that the Platform Science relies on, what happens is users in their truck manually make log entries that say, I was on duty for five hours and then I took a break and then I was on duty for four more. They report those to a central station and then the central station reports back and tabulates them up. That's what the prior art does. So what do you understand the Board to have said here, that a manual entry is sufficient? That a manual entry is sufficient as long as… What language do you rely on in the Board's decision as suggesting that? I think it's the language on Appendix 113 where the Board says, Wait, wait, wait. Oh, sorry. 113 where the Board says what? It says, when correct, and I believe this is at the top of the page, Judge Dyke, when correctly applied, based upon the location information,  Okay, but that's not saying that the displayed information isn't calculated automatically. The hours are calculated manually. Where do they say that? Well, that was our entire argument for the claim construction, was that… Where does the Board say that that's what their view is? If you read Appendix 112 through 113, the Board is responding to our argument… So where does it say that we're using manual inputs, we're construing the claim as only requiring manual inputs? That's, as I understand it, your argument, right? That is our argument because that's exactly what the Thiebaud reference teaches. That's all the Thiebaud reference teaches. I guess where does the Board say that that's what the claim construction is? Okay. So what the Board says is Appendix 112… Where? I'm trying to give you the exact quote. Okay. It says that the Board contends because… Sorry. We reject patent owners represent… That's the change claim construction. Their expert testified… This is the very bottom of Appendix 112. Mr. Andrews testifies that Thiebaud teaches generating HOS-compliant alerts, which we base on the location of the vehicle to ensure proper compliance criteria would be displayed. That's saying that you'd change it based on the display. And then what the Board says at Appendix 113 at the end is, thus even accepting patent owners' argument, that's our argument, when correctly applied based upon the location information modifies the display of information and not hours of service. Our argument was that manual data entry is not enough. Our argument was you have to do it automatically. I see my time is up. I'm going to give you two minutes for rebuttal. Mr. Phillips? John Phillips, representing Epilee Platform Science. May it please the Court. This is a straightforward substantial evidence appeal that on the tracks attempts to characterize in terms of legal error, even there is no legal error. I'd like to respond to several of the points that opposing counsel made during his presentation. One of the primary arguments is that JANKE does not continuously or constantly sample location, and therefore it can't show the actual driven route. And that's interesting because it appears that on the track, JANKE is trying to draw a distinction between continuous versus periodic. First of all, neither one appears in the claim. Second of all, either one would satisfy. I mean, I don't know if he's getting at the distinction between analog and digital, but it doesn't say it has to be analog or digital either. It's just if you have discrete points, all you've got to do is connect them. If you have continuous data, I don't even know how you would use that to display a path. You'd have to sample that continuous form. So I think that disposes of that argument. So Judge Reina mentioned about the motive, and she's actually right that the motive, as the judge relied on, was common sense. It was its most fundamental basis of motivation, and it's consistent with the KSR. And improving the functionality of a primary reference with the functionality shown in the secondary reference is common sense. And JANKE specifically says that it has means for displaying the route and the vehicle location information, and it makes sense under KSR that also displaying the actually traveled route is common. It's not a great leap. Opposing counsel notes that in Kantiyama, they make some interesting arguments that have absolutely no support in the record about mostly the locus is a mathematically constructed hypothetical path. None of that appears in Kantiyama. One of the criteria or one of the rationale that I believe opposing counsel used was that the other lines other than the locus line are straight, and apparently implying that the locus line is not straight, although figure 20A of Kantiyama shows a straight locus line, which wouldn't require a technical person to determine an intersection. An intersection doesn't appear in Kantiyama either. As Your Honor noted, Kantiyama actually specifically says that the locus is the driven route, and that's column 12, lines 51 to 55. So there's really no doubt about that. And in terms of the detour argument and the last antecedent rule, they're both irrelevant. First of all, there are no detours contemplated in Janki. And even if they were, figure 3 clearly shows, as explained in detail by the board, that the sampling is, whether you want to call it continuous or periodic, it keeps happening no matter what, whether you're in the corridor or whether you're outside the corridor. And you can see that in the figure 3. You look at boxes 152 where it determines the location, 154 where it determines whether or not you're within the compliance corridor, and 160 sends the location information and it shows that it'll loop. That just keeps happening every interval of T1. So, again, those are digital periodic points, which certainly indicate a continuous path that's actually driven. And, again, the fact that they're discrete points doesn't matter. It's not in the claim, and that's basically for all digital display. You're displaying discrete points, not continuous, not analog display, at least in modern technology. What else do we have? Present counsel also made a point that there's no sampling, other than at waypoints at specific locations designated by, I guess, the central station. That's just not true. Jackie mentioned waypoints twice, and it's in the background section, and it merely says it would be advantageous to know at a waypoint whether there's a significant deviation in route or time of arrival. Then, after that, in the detailed description in the figures, there's absolutely no discussion of waypoints. And, as I just mentioned, figure three shows continuous-slash-periodic sampling no matter what. So, with regard to the detour argument, I believe that's waived. It wasn't made below. But it's also not only incorrect, it's irrelevant. So, opposing counsel says the compliance corridor can be up to 2,300 feet, some plus 2,300 feet, and that doesn't matter because if the continuous corridor is 2,300 feet, the vehicle would still be within the corridor, predetermined corridor, because the compliance zone is part of the route. So, it would not, admittedly, not report under that scenario, would admittedly not report an out-of-corridor condition. But, again, figure three shows it would keep sampling no matter what. So, if you take the appellant's view, on the track's view, if it's three blocks away, you are sampling data for two reasons. One, it's within 2,300 feet, presumably, depending on how big the blocks are. And, two, it's continuously sampled whether it's in the corridor or not. So, what about claim three? They say that claim three requires automatic calculation of the hours worked by the driver and that the prior art shows manual input, as I understand their argument. Yeah, and that's not necessarily wrong that the driver does input it according to FIPO, but the claim doesn't say automatic. It just says displaying two things. It doesn't say calculating the hours of service. Well, it must mean calculating, right? No doubt it is, but it's not in the claim. The claim says displaying hours of service. Well, you can't display that if you don't calculate it. I understand that, but the claim does not have to describe a certain volume. So, let's assume for the moment that it requires calculation. Let's assume that. I assume that, yes. Okay, so your argument is that it does calculate it in the prior art based on manual input, and that's sufficient because that comes within the claims? Yes, Your Honor. The claim says, so, again, the claim does not have to be enabling to itself. It doesn't have to recite an entire embodiment, the embodiment enclosed in the specification.  Even if they're not, include all of the details of the specification. So, to require that, to require that the claim requires calculating when it specifically says displaying. In fact, the entire patent says nothing about calculating. I'm asking you to assume that it requires calculating. I don't see how you can display it without having calculated it. Certainly, it discloses calculating the hours of service. Your argument is that a manual input doesn't qualify, doesn't come within the claims scope. What's the answer to that? The claim doesn't require automatic. It doesn't exclude manual input. It doesn't say calculating. Although the embodiment, no doubt, calculates the hours of service, the claim only requires displaying. Okay. Go ahead. I think I've covered the topics I wanted to address. I'd be happy to entertain any questions from the panel. Okay. Thank you. Thank you, Mr. Collins. Mr. Wilcox, you have two minutes. Thank you, Judge Dyke. I think we're now on the same page about what the board understood the claims require, or at least what platform science's argument is. But just in case, let me try and take another run at explaining how I think you can tell that that's how the board understood the claims. So, if you look at Appendix 1136 to 1137, and specifically Appendix 1137, and this is our patent owner response. And what we say there, Judge Dyke, while you're turning there, is that determining whether a driver's hours of service are in compliance with the location-specific regulations is not the same, which was their argument, is not the same as determining the hours of service from location information. And we go on to explain that that's what the patent requires, is determining the hours of service from location information from the vehicle. Where is it? They say the prior art shows manual input, and that that's within the scope of the claims here. What is it in Claim 3 that says you can't rely on manual input, that it has to be done automatically? So, what Claim 3 says is the hours of service have to be based on location information from the vehicle. And that's the automatic calculation. What they're saying is it doesn't have to be based on hours of information. Why can't it be based on manual input? Is there something in the specification that says it can't be based on manual input? Well, I think if you look at the examples in the specification, like in Column 3, lines 47 to 52, they are all automatic input. But Judge Teich, even if you don't believe that and you think it could be based on manual input, what the T-bar reference actually teaches is not even manual input of location information that then gets you to the calculation. It's manual input of the hours actually driven by the driver. So, whether it's automatic or manual, it doesn't teach calculating the hours of service based on location information from the vehicle.  Okay, thank you. Thank you, Judge Teich. Thank both counsel. The case is submitted.